UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

|                          |   |                    |
|--------------------------|---|--------------------|
| UNITED STATES OF AMERICA | ) |                    |
|                          | ) |                    |
| v.                       | ) | No. 1: 04-CR-188   |
|                          | ) | *Judge Edgar*      |
| GARY MICHAEL BROCK       | ) |                    |
|                          | ) |                    |

**MEMORANDUM**

Defendant Gary Michael Brock (herein "Mike" or "Mike Brock"), along with his brother Jerry, was convicted by a jury of conspiracy to violate the Hobbs Act, 18 U.S.C. § 1951. The Brock brothers operated a bail bonding company. The object and purpose of the conspiracy was to pay a public official, General Sessions Court Clerk Scott Simcox ("Simcox"), to delete bail bond forfeitures from state court records and fix traffic tickets.

Mike Brock, through his counsel, has filed a post-trial motion for judgment of acquittal pursuant to Fed. R. Crim. P. 29(c). In the alternative, he moves for a new trial pursuant to Fed. R. Crim. P. 33. [Court Doc. No. 208]. He makes several arguments in support of the motion, none of which have merit. These arguments will be dealt with herein *seriatim*.

**I.      Standard of Review**

With regard to the motion for judgment of acquittal under Rule 29, the Court must determine whether, after reviewing the evidence in the light most favorable to the prosecution, any

-1-

rational trier of fact could have found the elements of the crime beyond a reasonable doubt. The Court under Rule 29 does not weigh the evidence, consider the credibility of witnesses, or substitute its judgment for that of the jury. *United States v. Meyer*, 359 F.3d 820, 826 (6th Cir. 1979); *United States v. Frost*, 125 F.3d 346, 354 (6th Cir. 1997); *United States v. Hilliard*, 11 F.3d 618, 620 (6th Cir. 1993); *United States v. Beddow*, 957 F.2d 1330, 1334 (6th Cir. 1992); *cf. Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *United States v. Evans*, 883 F.2d 496, 501 (6th Cir. 1989).

In deciding the motion for new trial under Rule 33, the Court must determine whether the jury's verdict is against the manifest weight of the evidence. The Court under Rule 33 considers the credibility of the witnesses and the weight of the evidence to ensure that there is not a miscarriage of justice. *United States v. Solorio,* 337 F.3d 580, 589 n. 6 (6th Cir. 2003); *United States v. Lutz*, 154 F.3d 581, 589 (6th Cir. 1998); *United States v. Pierce*, 62 F.3d 818, 825 (6th Cir. 1995); *United States v. Ashworth*, 836 F.2d 260, 266 (6th Cir. 1988).

**II.** **Analysis**

The motion by Mike Brock for judgment of acquittal under Rule 29 will be denied. After reviewing the evidence in the light most favorable to the prosecution, the Court concludes that a rational trier of fact could have found that the elements of the crime were proved beyond a reasonable doubt.

Mike Brock's motion for a new trial under Rule 33 will likewise be denied. The Court concludes that the jury's verdict finding Mike Brock guilty is not against the manifest weight of the evidence.

-2-

Case 1:04-cr-00188   Document 214   Filed 08/10/05   Page 2 of 6   PageID #: 46

### A. <u>Quantum of the Evidence</u>

Mike Brock asserts that the evidence presented by the government at trial was not sufficient to support the jury's verdict, and warrants a new trial.

The bulk of the evidence in this case was comprised of the testimony of Simcox, and tape recordings of discussions that Simcox had with the Brock brothers at various times between December 2003 and April 2004. Simcox testified that he was paid by Brock Bonding to make approximately twenty four bond forfeitures disappear from court records – and Simcox did so. Simcox also testified that Jerry Brock paid him money to fix some traffic tickets, one of which belonged to Mike Brock.

Once the FBI confronted Simcox in November or early December 2003, Simcox began tape recording conversations with the Brock brothers at the behest of the FBI. With specific reference to Mike Brock, the tapes reveal his brother Jerry saying on more than one occasion that Mike knew about the payoffs. The tapes have Mike Brock asking Simcox, "Hey, what happened with that ticket? Is that thing kaput?" (An earlier recording had Jerry Brock paying Simcox to take care of this ticket, among others.) There is a tape recorded discussion of Jerry Brock telling Mike Brock how Jerry has explained to Simcox how the money received for bail bonds is divided up. Mike Brock says, "Yeah, we can change percentages anytime we want."

In a March 24, 2004, conversation between Simcox and Mike Brock at the Brock Bonding Company office, Mike again discusses his traffic ticket with Simcox and Mike asks about one of the forfeitures (Meyers) that Simcox was supposed to have taken care of. (Of course, Simcox had not handled this, because from the time Simcox went to work for the FBI in December 2003, Simcox did not "fix" any forfeitures or tickets.) Apparently Brock Bonding went ahead and paid

this bond forfeiture, but Mike Brock told Simcox not to worry about it because it was "a little one so it don't matter." There was some other discussion on this tape recording, and others, demonstrating that Mike Brock was indeed involved in the payoff scheme.

Finally, Simcox testified about a telephone conversation he had with Mike Brock on April 20, 2004. The tape on this is not very clear because Mike told Simcox to take him off the speaker phone. However, Simcox testified that the discussion was basically Mike Brock complaining that his traffic ticket had not been taken care of and that it had appeared on a court docket.

While the proof in this case against Mike Brock was not as great as that against his brother, Jerry, it is nonetheless ample to support the conviction of Mike Brock. Moreover, as the Court instructed the jury, regarding conspiracy, the government did not have to prove that Mike Brock was a member of the conspiracy from the very beginning, nor was proof required that he "played a major role in the conspiracy" or that his "connection to the conspiracy was substantial." There was sufficient evidence for the jury to find, as the Court instructed the jury, that Mike Brock "knew the conspiracy's main purpose," and he "voluntarily joined it intending to help advance or achieve its goals." In sum, nothing about the quantity or quality of the evidence in this case warrants the granting of defendant Mike Brock's motion under either Rule 29 or Rule 33.

B. **Prosecutor's Final Argument**

Mike Brock's counsel next contends that portions of some of the above summarized tapes were not played to the jury during the testimony of Simcox, but were played to the jury during the government's final, closing argument. The trial transcript does not confirm this one way or the other. The Court did not notice this, and does not recall any contemporaneous objection being made

by Mike Brock's counsel.

### C. Revised Transcript of Tape Recorded Conversation

Mike Brock also complains that the government did not timely furnish him with a revised transcript of the April 20, 2004, telephone call between Simcox and Mike Brock. Even if this did happen, no error occurred here because the jury was instructed that the tape recording, not the transcript, was evidence. Moreover, since the tape itself was not entirely audible, Simcox in effect merely testified to what Mike Brock said to him in the conversation. Moreover, the content of the conversation was merely cumulative of the discussion that Mike Brock had already had with Simcox on the March 24, 2004 wherein Mike Brock inquired after his traffic ticket.

### D. The James Carthorn[1] Deposition

In a piece of additional evidence adduced by the government, James Carthorn ("Carthorn"), a colorful former Brock Bonding Company employee, now employed by "Bad Boy Bonding," testified that he had witnessed both Jerry and Mike Brock paying off Simcox. Apparently at a deposition in another civil suit, Carthorn testified to the contrary.

Mike Brock's attorneys thoroughly cross examined Carthorn on this at trial, and displayed pages from the Carthorn deposition on the courtroom monitor for all to see. However, no one ever requested that the Carthorn deposition be admitted as evidence, although as a technical matter, the part of the deposition that contained inconsistent statements could probably have been admitted for impeachment purposes under Fed. R. Evid. 613(b).

During the final argument, the Court declined to allow defense counsel to display

---

[1] It is not clear how this person spells his name. The government uses "Carthorn." The defense uses "Carthen."

-5-

Case 1:04-cr-00188   Document 214   Filed 08/10/05   Page 5 of 6   PageID #: 49

the Carthorn deposition to the jury in that it had not been admitted into evidence. However, the jury was well aware of what was in the deposition, having already seen relevant parts of it, and the defense was permitted to argue, and did argue, that Carthorn was not credible because of the prior inconsistent statement. The Court's ruling was not error, and in any event, the ruling did not likely have any impact on the outcome of the case.

### E. Time Limit on Final Argument

There were two days of proof in this trial, and only three witnesses. Each defendant was permitted a final argument to the jury of twenty minutes. The Court has the authority and discretion to place reasonable limits on closing arguments. *United States v. Mills*, 366 F.2d 512, (6th Cir. 1966). Under the circumstances of this case, the amount of time allowed by the Court to Mike Brock's counsel for closing arguments was fair and reasonable.

## III. Conclusion

Since the evidence supports the verdict of the jury, and since there are no other grounds warranting a new trial, defendant Mike Brock's motion for a judgment of acquittal or, alternatively, motion for a new trial is respectfully **DENIED**.

An order will enter.

*/s/ R. Allan Edgar*
R. ALLAN EDGAR
CHIEF UNITED STATES DISTRICT JUDGE